**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PRINCE PILGRIM,

Plaintiff,

- v -                                                    Civ. No. 9:07-CV-1001
                                                                    (GLS/RFT)

NEW YORK STATE DEPARTMENT OF CORRECTIONAL
SERVICES; BRIAN FISCHER, *Commissioner of New York*
*State Department of Correctional Services*,

Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

PRINCE PILGRIM
Plaintiff, *Pro Se*
92-A-8847
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN                    AARON M. BALDWIN, ESQ.
New York State Attorney General                   Assistant Attorney General
Attorney for Defendants
Department of Law
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>REPORT-RECOMMENDATION and ORDER</u>

Prince Pilgrim, a New York state prison inmate proceeding *pro se* and *in forma pauperis*,

commenced this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"). Dkt. No. 1, Compl. On April 20, 2009, Defendants filed

a Motion for Summary Judgment (Dkt. No. 36), which Plaintiff opposed (Dkt. No. 47). On March

18, 2010, this Court issued a Report and Recommendation granting Defendants' Motion in part and

denying it in part.  Dkt. No. 50.  Over objections by both party opponents (Dkt. Nos. 55 & 56), on

September 17, 2010, the Honorable Gary L. Sharpe, United States District Judge, adopted the Report

and Recommendation in its entirety.  Dkt. No. 57, Order.  Pursuant to this Order, the claims against

Defendant Dale Artus, the Superintendent of Clinton Correctional Facility, were dismissed for lack

of personal involvement, and, alternatively, as being without merit.  *See* Dkt. No. 50 at pp. 9-18.

Judge Sharpe found, however, that a question of fact existed as to whether Plaintiff's claim that his

rights under the RLUIPA and First Amendment were violated.  In light of Plaintiff's *pro se* status,

and in the interest of judicial economy, the New York State Department of Correctional Services

("DOCS")[1] and DOCS Commissioner Brian Fischer were substituted as proper Defendants solely

to Plaintiff's RLUIPA and First Amendment claims.  *Id.* at pp. 26-27.  Consideration of the remedy

prescribed by the RLUIPA,[2] the Eleventh Amendment, and the affirmative defense of qualified

immunity demanded that Plaintiff's claims against these Defendants be limited to non-monetary

equitable relief, only.  *See id.* at pp. 27-31.

Defendants now bring a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(1).  Dkt. No. 69.  Plaintiff opposes the Motion.  Dkt. No.

73.  For the reasons that follow, we recommend that Defendants' Motion be **granted** and Plaintiff's

Complaint be **dismissed** in its entirety.

## I. BACKGROUND

---

[1] The Court is aware that, on April 1, 2011, New York State Department of Correctional Services and Parole merged together into one agency now entitled New York State Department of Corrections and Community Supervision ("NYSDOCCS").  In order to maintain consistency with our previous Report and Recommendation substituting Defendants in this instant action, we will continue to refer to this specific Defendant as DOCS.

[2] The Supreme Court recently had occasion to consider the question of what relief is available under a RLUIPA cause of action.  *See Sossamon v. Texas*, ___ U.S. ___, 131 S.Ct. 1651 (2011).  The Supreme Court found, as we did in our previous Report and Recommendation on this matter, that RLUIPA does not expose the States to private suits for money damages.  Thus, our prior finding of the same remains valid.

For a complete recitation of the factual background of this case, we refer to this Court's Report and Recommendation addressing former Defendant Artus' Motion for Summary Judgment. *See* Dkt. No. 50.  In short, Plaintiff claims that while he was an inmate at Clinton Correctional Facility, his constitutional and statutory rights were violated, including the right to freely exercise his religion.  Plaintiff, a registered Nation of Islam ("NOI") member,[3] complains that misbehavior reports were issued against him because, undisputably, Plaintiff was wearing his hair in dreadlocks in violation of a DOCS' policy prohibiting this hairstyle except for members of the Rastafarian faith.  The crux of Plaintiff's Complaint, as it currently stands, is that the discipline he received was unlawful under RLUIPA and the First Amendment because DOCS Directive 4914 regarding acceptable inmate hair styles violates his right to freely exercise his religion.

## II. DISCUSSION

### A. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).  Federal courts are "duty-bound . . . to address the issue of subject matter jurisdiction at the outset."  *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 929 (2d Cir. 1998).  In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]" though "argumentative inferences favorable to the

---

[3] While NOI dogma does not require their members to wear dreadlocks, Plaintiff asserts that he wears his hair in that style pursuant to his own personal faith and personal interpretations of the Qu'ran and the Bible.  Dkt. No. 47-1, Pl.'s Decl., dated Aug. 31, 2009, at ¶ 43.  The record before us shows that Plaintiff has been growing dreadlocks since approximately 1993, and there is nothing in the record undermining the sincerity of Plaintiff's religious beliefs. *See* Dkt. No. 36-3, Pl.'s Dep., dated Feb. 19, 2009, at p. 12; *see also* Dkt. No. 50 at pp. 19-20.

party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) & *Norton v. Larney*, 266 U.S. 511, 515 (1925)). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (citations omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Furthermore, because Plaintiff brings this action *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### B. Mootness

Defendants contend that, as a result of complaints made by non-Rastafarian inmates who wished to maintain dreadlock hairstyles, such as Plaintiff, and "guidance from certain judicial decisions which raised questions about whether the prohibition against non-Rastafarian inmates maintaining dreadlocks might violate RLUIPA or the First Amendment," on September 2, 2010, DOCS issued a new version of Directive 4914 which "supersedes and replaces former Directive 4914." Dkt. No. 69-3, Defs.' Mem. of Law, at pp. 2-3 (citing, *inter alia*, *Amaker v. Goord*, 2007 WL 4560596 (W.D.N.Y. Mar. 9, 2007) & Dkt. No. 69-1, Brian Fischer Decl., dated Dec. 23, 2010, at ¶ 6). Diverging from the old Directive, the new Directive expressly states that "[t]he dreadlocked hairstyle is allowed," and makes no limitation to specific religious designations. Dkt. No. 69-2, Ex. C, New Directive No. 4914, dated Sept. 2, 2010, at III(B)(2). Therefore, as Defendants argue, Plaintiff's claims for prospective equitable relief under the First Amendment and RLUIPA are moot

given the adoption of a new version of Directive 4914.  We agree.

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to issues which present an actual "case or controversy."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Linares v. Barkley*, 2010 WL 4962998, at *2 (N.D.N.Y. Oct. 8, 2010).  A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002).  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983); *see also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("A case is deemed moot where the problem sought to be remedied has ceased, and where there is no reasonable expectation that the wrong will be repeated.") (internal citation omitted).

If a court determines an action is moot, it may still entertain such action if it is one that is "capable of repetition, yet evading review."  *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999).  An otherwise moot claim is "capable of repetition" if 1) the duration of the challenged condition was too limited in duration to permit litigation prior to its cessation, and 2) if there is a reasonable expectation that the plaintiff will be subject to the same action again.  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).  A federal court may also entertain a claim if collateral consequences would ensue from denial of the relief sought on mootness grounds.  *Werber v. United States*, 149 F.3d 172, 176 (2d Cir. 1998).

Here, Defendants, on their own accord, reconsidered and effected a change in their prison regulations and rules regarding acceptable inmate hairstyles.  This change to Directive 4914 would

-5-

seemingly grant Plaintiff exactly the relief he seeks – the ability to wear his hair in dreadlocks as his personal dogma demands, without being subject to disciplinary action.  However, a defendant's voluntary cessation of the contested policy must be scrutinized carefully by the courts.  *See Smith v. New York State Dep't. of Corr. Servs.*, 2010 WL 1192057, at *5 (S.D.N.Y. Mar. 1, 2010) (citing *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 91-92 (2d Cir. 1998)).

In *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, the Supreme Court stated that a defendant's voluntary cessation of a challenged practice may not necessarily deprive a federal court of its power to determine the legality of the practice, and that the "standard . . . announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent[.]"  528 U.S. 167, 189 (2000).  "[A] party 'claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Seidemann v. Bowen*, 499 F.3d 119, 128-29 (2d Cir. 2007) (quoting *Laidlaw*, 528 U.S. at 190).  However, "mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence."  *Van Wie v. Pataki*, 267 F.3d 109, 115 (2d Cir. 2001) (internal quotation omitted).

Defendants have met their heavy burden of demonstrating that DOCS's practice of allowing only members of certain religious sects, such as those of the Rastafarian faith, to maintain dreadlock hairstyles, and punishing noncompliance with their Directive, has ceased, and there is no reasonable probability that such a practice will recur.  The voluntary change occurred in the form of a new, superceding Directive, and as "[t]his change in policy is embodied in an official prison document . . . it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

recur." *Tawwab v. Metz*, 554 F.2d 22, 24 (2d Cir. 1977) (internal quotation omitted). Additionally, there is authority stating that a government entity's representation that their complained-about conduct has been discontinued is entitled to some deference in determining whether a suit seeking prospective equitable relief against that conduct has been mooted. *Lamar Adver. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 376-77 (2d Cir. 2004). Defendants represent that all inmates and correctional services staff have been notified of the change in Directive 4914, and prior Central Office Review Committee ("CORC") decisions interpreting and enforcing the old Directive are "no longer valid." Fischer Decl. at ¶ 13. Defendants further enounce that DOCS has no intention of reinstating the former Directive, and that Plaintiff, specifically, is able under the new Directive to maintain his dreadlocks without the risk of being disciplined, "regardless of his non-Rastafarian religious designation." *Id.* at ¶¶ 14-15. As it seems that Defendants utilized the proper procedures and process to revise their regulation on inmate hairstyles, there is no reason to impute DOCS with the intention to raise the old Directive from the dead. *See Granite State Outdoor Adver., Inc. v. Town of Orange, Connecticut*, 303 F.3d 450, 451-52 (2d Cir. 2002).

Despite the fact that, as of September 2, 2010, he has been able to maintain his dreadlocks without the risk of being disciplined by correction officers, Plaintiff remains unsatisfied. In his Response in Opposition to Defendants' Motion to Dismiss, Plaintiff argues Defendants' voluntary cessation of the complained-about practice does not moot his request for equitable relief because the new Directive remains "extreme[ly] vague" and does not include the explicit representation that dreadlocks are allowed "regardless of religious designation." *See* Dkt. No. 73, Pl. Resp. This Court is not persuaded by that argument. Prior to the changes, Directive 4914 and CORC decisions interpreting the old Directive expressly provided that only inmates of the Rastafarian faith could

wear their hair in dreadlocks.  *See* Fischer Decl. at ¶ 4 (citing Dkt. No. 69-2, Exs. A, Former Directive No. 4914 & B, CORC Decisions).  That limitation has been removed and now the Directive states, quite plainly, that "[t]he dreadlock hairstyle is allowed."  *See* Dkt. No. 69-2,  Ex. C, New Directive No. 4914.  This declaration is unambiguous and direct and makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968).  While Plaintiff may prefer some express recognition that members of the NOI are allowed to wear dreadlocks, the effect of the new Directive 4914 grants Plaintiff precisely the change he seeks.[4]

Therefore, because there is no reasonable expectation that Plaintiff will be subject to discipline for maintaining a dreadlock hairstyle regardless of his non-Rastafarian faith due to the new Directive, Plaintiff's claims for equitable relief,[5] in their entirety, are moot.  As previously noted, Plaintiff's relief is limited to non-monetary equitable relief only, pursuant to Judge Sharpe's decision and the law of the case doctrine.[6]  Accordingly, we recommend Plaintiff's complaint be

---

[4] Perhaps a part of Plaintiff's demand for an explicit statement that the ability to maintain dreadlocks regardless of religious designation stems from the fact that the former Directive 4914 was silent as to whether the dreadlock hairstyle was permissible, and it was relevant CORC determinations, which have the effect of directives, that ruled only inmates of the Rastafarian religion could wear dreadlocks.  *See* Dkt. No. 69-2, Exs. A, Former Directive No. 4914 & B, CORC Decisions.  However, it would be quite a stretch of interpretation to imagine a future CORC decision that could read some sort of religious limitation into the now expressly-provided sentence that "[t]he dreadlocked hairstyle is allowed."  *See id.* at Ex. C, New Directive No. 4914.

[5] To the extent that Plaintiff is requesting some type of declaratory judgment, *see* Pl.'s Resp. at p. 10, those claims are moot as well.  *See Fox v. Bd. of Trustees of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (requesting a declaratory judgment does not excuse the subject matter requirement of an active case or controversy).  To the extent that Plaintiff is seeking retrospective relief, such as expungement of past misbehavior reports, those claims are barred.  It is well settled that "injunctive relief is not appropriate for past injuries," *see Nation Magazine v. U.S. Dep't of Defense*, 762 F. Supp. 1558, 1570 (S.D.N.Y. 1991), even when the Eleventh Amendment limits injunctive relief to be the only available remedy, *see Green v. Mansour*, 474 U.S. 64, 68 (1985) ("[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law.  We have refused to extend [that] reasoning . . . , however, to claims for retrospective relief.") (internal citations omitted).

[6] The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Pescatore v. Pan Am. World Airways, Inc.*,
(continued...)

**dismissed** in its entirety for want of subject matter jurisdiction.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 69) be **GRANTED** and

Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* FED. R. CIV. P.

72, 6(a).


Date:   September 1, 2011
         Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

---

[6](...continued)
97 F.3d 1, 7-8 (2d Cir. 1996) (quoting *Dilaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992)).